IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CHADWICK JAMES YANCEY,**

        Plaintiff,

    v.

**NORCOR et al.,**

        Defendants.

No. 3:11-cv-000363-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Pro se plaintiff Chadwick Yancey's quest for relief came to an abrupt and premature end when his case was dismissed with prejudice on the first day of a three-day jury trial. The reasons for this unusual dismissal are the subject of this brief opinion and order.

### LEGAL STANDARDS

    If a party fails to obey a pretrial order, Rule 16(f) authorizes the district court to order sanctions as provided in Rule 37(b)(2)(A). Fed. R. Civ. P. 16(f). One of these approved sanctions is dismissal of the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(v). In light of the harsh nature of this sanction,

1 – OPINION AND ORDER

> A district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.'[1]

*Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (quoting *Thompson v. Housing Auth.*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam)). I address each of these factors below.

## DISCUSSION

### I. Facts

Mr. Yancey has long demonstrated an unwillingness to follow the rules of court. This pattern of obstreperous conduct manifested itself in Mr. Yancey's confrontation with Wasco County Judge Bernard L. Smith, his interactions with his former attorneys, and throughout all proceedings in this Court.

At the pretrial conference, I was particularly troubled by Mr. Yancey's churlish behavior. Out of concern that he be fully aware of the potential consequences of such behavior, I discussed with him the possibility of dismissal if he did not handle himself properly at trial. During the pretrial conference, I also granted defendants' motion to bifurcate [75],[2] granted in part defendants' motions in limine [71], and explained to Mr. Yancey at some length what he would and would not be permitted to say and do at trial. I reiterated these instructions in a written pretrial order [81]. Specifically, I ordered plaintiff not to reference other instances of alleged misconduct at NORCOR; not to reference settlement negotiations; not to swear at or otherwise

---

[1] In *Malone*, the Ninth Circuit addressed both Rule 16(f) and Rule 41(b), which enables the district court to order dismissal "[i]f the plaintiff fails . . . to comply with . . . a court order . . . ." Fed. R. Civ. P. 41(b); *see Malone*, 833 F.2d at 130. Because Rule 41(b) operates on a defendant's motion, Rule 16(f) seems to be the better fit here, although my analysis and conclusion would be identical either way.

[2] This resulted in a first trial against the individual defendants on Mr. Yancey's allegations of excessive force and denial of medical treatment, and a potential second trial against NORCOR alleging a policy and practice of such misconduct.

disrespect me or opposing counsel; and not to speak out of turn or otherwise interrupt me or opposing counsel. Earlier, I had been forced to instruct Mr. Yancey that he not swear at Clerk's Office personnel. Although Mr. Yancey viewed these orders only as unfair restrictions on his ability to present his case, they were actually designed to assist him in telling his story to the jury without jeopardizing his case by injecting inadmissible evidence and baseless allegations.

Significantly, the pretrial order was not the only form of assistance provided to Mr. Yancey. Given his constant state of total disorganization, and to make it clear where the dividing line was between the first and second trials, my clerks went to the extraordinary length of creating for him a witness list and an exhibit binder. These included witness statements so it would be clear to Mr. Yancey what topics his witnesses could cover.

Mr. Yancey's conduct at trial, almost from the beginning, reflected his determination to violate the pretrial order. As the transcript reveals, his tendency to assume the worst behind every event and to ask questions that had been repeatedly answered was on full display. What is not clear from the written transcript is a constant pattern of mugging for the jury, non-verbal mocking of court rulings and opposing arguments, and blatant disrespect for the process, most of which I chose to ignore. In addition, Mr. Yancey made several references to not knowing what the rules were and what he was allowed to say or do. Although I was initially sympathetic, as I would be with any pro se litigant, it became clear over time that this was largely an act that he used to excuse repeated violations.

By the time we reconvened after lunch, I felt it necessary to review several violations with Mr. Yancey and to warn him again of the potential of dismissal. At this point, I had determined that it was unlikely he could make it through an entire trial without an endless series of violations and that there was a real risk of mistrial. I had some hope, however, that if I could

3 – OPINION AND ORDER

get him to put the video of the incident and his own testimony on the record, I might be able to finish the trial with him in another room participating via CCTV, and thus avoid a mistrial. This I also discussed with him.

I then brought in the jury for the presentation of evidence. Unfortunately, Mr. Yancey's violations continued, and his adamant refusal to stay within any reasonable bounds for a fair trial was clear. His unacceptable conduct culminated in a baseless allegation that the defendant corrections officers were using cocaine at the time of the incident. This allegation was preceded by an admission that his former attorneys had warned him not to make it. I removed the jury, and our discussion of the impropriety of his conduct went downhill fast. Finally, it became clear to me that he had no intention of abiding by any ruling I made. I was also increasingly concerned that his frequent references to excluded evidence were making the trial fundamentally unfair to defendants. As a result, I dismissed the case with prejudice.

I assume that Mr. Yancey may not have fully appreciated what "with prejudice" meant and that he may not have appreciated that there would be no second trial on his *Monell* claim. If he thought he would be back in court again, his reaction to the dismissal revealed whether he could in fact control himself at any future trial. He threatened the defendants individually and said "f### you" to each member of my staff, expressing the wish that each one would die a slow, painful death. Amidst other cursing, he demanded a transcript and stated that, in violation of standing court orders in this district, he had secretly taped the entire proceeding. Then, still spewing profanity, he spat on the door to the courtroom on the way out. Aqua et igni interdictus.

4 – OPINION AND ORDER

## II. Application of the *Malone* Standard

### A. *The Public's Interest in Expeditious Resolution*

This factor always favors dismissal. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Therefore, I find that dismissal in this instance serves the public's interest in expeditious resolution of litigation.

### B. *The Court's Need to Manage Its Docket*

Mr. Yancey's repeated violations of court orders consumed judicial resources that could have been devoted to other cases on the docket. Moreover, as the Supreme Court has recognized, dismissal must be available to the district court "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). For these reasons, I find that this second factor favors dismissal on these facts, too.

### C. *The Risk of Prejudice to the Defendants*

To determine whether defendants have been prejudiced, the court "examine[s] whether the plaintiff's actions impair the defendant[s'] ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. I find that Mr. Yancey's numerous references to settlement negotiations and other instances of alleged misconduct at NORCOR did in fact threaten to interfere with the rightful decision of the case. Therefore, this factor strongly favors dismissal here.

### D. *The Public Policy Favoring the Disposition of Cases on Their Merits*

Public policy always favors disposition of cases on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). As a result, I find that this factor weighs against dismissal here.

5 – OPINION AND ORDER

      E.     *The Availability of Less Drastic Sanctions*

Less drastic sanctions include (1) a warning, (2) a formal reprimand, (3) placing the case at the bottom of the calendar, (4) a fine, (5) the imposition of costs or attorney fees, (6) the temporary suspension of the culpable counsel from practice before the court, (7) dismissal of the suit unless new counsel is secured, (8) preclusion of claims and defenses; and (9) the imposition of fees and costs upon plaintiff's counsel. *Malone*, 833 F.2d at 132 n.1. I was aware of this prong of the *Malone* standard when I dismissed the case, but many of these potential sanctions—like a formal reprimand or placing the case at the bottom of the calendar—are simply unavailable when the case is already at trial and the plaintiff is pro se. Others—like a fine or the imposition of costs or attorney fees—are pointless where the pro se plaintiff earns a modest living by making jewelry on a mountain in California.

As I considered the escalating situation, I identified two viable, alternative sanctions at my disposal: continual warnings and participation via CCTV. With each severe violation of the pretrial order, I issued Mr. Yancey a warning that such conduct would not be tolerated and that he was running the very real risk that his case would be dismissed. With Mr. Yancey, these stern and repeated warnings were ineffectual. That left me with only one alternative arrow in my quiver: participation via CCTV. As described above, my goal after the lunch break was to get Mr. Yancey to put the video of the incident and his own testimony on the record so that he would have the option to finish the trial with his participation via CCTV if he continued to violate court orders. A series of violations during the early minutes of his own testimony—the most egregious of which being his baseless cocaine allegation against the defendant corrections officers—prevented the CCTV option. After he made that allegation, I made one last-ditch effort by removing the jury and issuing a final warning to no avail. By now, I had allowed Mr. Yancey's

pattern of violating the pretrial order to drag on much longer than I would have done with a licensed attorney. But at some point, enough is finally enough. Because all less drastic options proved inadequate, I find that this last factor also favors dismissal in this case.

## CONCLUSION

This was not in any way a frivolous case. Mr. Yancey had video evidence from which he could make a credible case of excessive force. That is not to suggest that he should have, or would have, won the trial. The defense could have put the video in context in such a way that might well have justified the use of force against Mr. Yancey in the minds of a rational jury. It was just the kind of case that should have been tried, however, and it wouldn't have been hard for Mr. Yancey, if he had chosen to do so, to present this basic story to the jury. It was certainly my hope, to which I devoted my best efforts, to see that this case was decided on the merits. Unfortunately, those best efforts were undermined by Mr. Yancey's own misconduct.

As described above, four of the five *Malone* factors favor the dismissal of this case. Therefore, plaintiff's claims are DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this   24th   day of January, 2013.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge